Judge Fernandez, Judge Wardlow, Judge Collins, may it please the court. Ms. Sherry Radford has two cases joined on this appeal for argument, one in which she claims that she was denied equal protection in due process when she was transferred from one school to another school within the district, the second case in which she argues that she was discriminated against based on her gender when she was subjected to the sexual harassment procedure and found liable for sexual harassment. If I might start with the sexual harassment case first, since it would enable me to explain more facts. I believe that the, as I have represented Ms. Radford in these cases, the defendants have attempted to present rather sparse alleged relevant facts in these cases, such as Ms. Radford communicated with the principal of her school with personal communications when they were friends. The principal decided to cut off that friendship. Ms. Radford was told to communicate with the principal no more on personal matters. However, thereafter, she continued to send him personal messages, and therefore, we had to transfer her. And secondly, she was subjected to the district's EEO process and found liable for sexual harassment. I would say that the problem with that kind of look at the case, and would hope that the court would not look at the case in that brevity, because even in that brevity, the facts are inaccurate. And in that brevity, the facts upon which Ms. Radford's claims are based are totally missing. With respect to the sexual harassment case, Ms. Radford contends that if she had been a male and had a friendship with her male principal, and they'd had a falling out and were no longer friends, there might have been action taken to separate them if their conflict over that aborted friendship had continued, but the district would not have pursued a sexual harassment complaint against a male. I say that because nowhere in the record is there evidence that the district thought there was sexual conduct. Nowhere in the record is there an indication that the investigator hired by the district thought there was sexual conduct after the December meeting where Ms. Radford agreed to not engage in any more sexual conduct. There are three types of messages that I would suggest to the court that Ms. Radford sent after the December meeting, December 2003, when she agreed not to send any more personal messages to her principal. One category would be messages with sexual innuendo. The only message with sexual innuendo that you have been apprised of multiple times in the documents of the defendants is the December letter Ms. Radford sent to Mr. Salazar, her principal. That letter, of course, was sent before the December meeting and in his deposition, I think Mr. Salazar indicated that that was the letter that prompted the meeting, that ended in the agreement that Ms. Radford would no longer send any personal messages to Mr. Salazar. That has sexual innuendo in it and I would ask the court to look at the fact that the sexual innuendo is a recounting of things that they were involved in, things that they thought, things that they said, much of it was. So that's one that has sexual innuendo. After the meeting where Ms. Radford agreed not to send any more personal messages, you find no messages with sexual innuendo at all. No messages, obviously, seeking sex from Mr. Salazar, no messages that there was any finding were sent to Mr. Salazar because he was a male or anything of that nature. Let me ask you something about this. So in all of these claims, the district has offered as its legitimate reason for transferring Ms. Radford that she was creating a hostile work environment for Mr. Salazar. They've offered two reasons. They offered that reason and then another reason and you're contending that that was pretext. But yet in the records, it appears that Ms. Radford was otherwise generally highly regarded as a teacher. So what, so why do you think what was this pretext for? Why would they otherwise want to get rid of Ms. Radford? I mean, just because she was a woman. No, we have, well, it was, we're talking about the sexual harassment complaint now. Overall, my response to you is this. Our argument, and there's some evidence to support this, but our argument would be to a jury and a jury would have to make this decision, I think, that Mr. Salazar wanted her gone. And we have some evidence that he wanted her gone even right after the December. As she was a woman? No, no, no, no. Well, I'm trying to respond maybe to two questions. If you want me to stick to the sexual harassment aspect, it is first my suggestion to you that if I argued to a jury, a reasonable person under all the facts of this case could conclude that the district would not have advised Mr. Salazar to file a sexual harassment complaint if Ms. Radford had been a man who Mr. Salazar decided to break off a friendship with. And I want to caution or remind the court that Mr. Salazar did not go to the district and say, I want to file a sexual harassment complaint. That's clear in the record. The district's attorney advised him to do so. So the progression we have is this, that after that December meeting, messages were sent by Ms. Radford to Mr. Salazar of two kinds. One, admittedly, there were some personal ones. Two, there were business-related ones. The district did nothing about, as you know, over a period of five months, Mr. Salazar repeatedly went to Mr. Osuna and said, can you stop this? And Mr. Osuna, on at least three occasions, based on the record, said, I'll issue another cease and desist order. Never did it. Never did anything. I think it's also understood and agreed that they could have. They didn't need to have a sexual harassment complaint filed to rectify the situation. They could have. Had they given Ms. Radford proper notice, they could have transferred her based on the conduct, allegedly, that she did. No question about it. So the first question is, why was a sexual, why did the district advise Salazar to file a sexual harassment complaint? And there's no answer. No answer, and no reason for that. No reason for that. So that circumstance buttresses, I would submit, my suggestion to you, that had Ms. Radford been a Mr. Radford, there wouldn't have been a sexual harassment complaint filed. Also, secondly, I believe you can, by way of making a prima facie case of sexual, sex discrimination, point out that rules were violated by the employer in whatever employment action was taken. Here, clearly, rules were violated. Ms. Radford was not given the opportunity to respond to all of the instances of alleged harassment with which she was charged. There were two instances that she never knew about until after she was found liable for sexual harassment. The alleged incident with the Day of the Teacher event, where a particular song was played. And a second incident where Ms. Radford, three years, at least, before all the relevant facts, mentioned to someone that Mr. Salazar was gay. She never knew about those, never had an opportunity to respond to those until after she found out she'd been found liable for sexual harassment. Those two instances, plus an instance that the defense has objected to on the grounds of hearsay, that two women wanted to file sexual harassment complaints within two years of this incident prior, and the district wouldn't accept their complaints, it wouldn't pursue them. Here, a man is advised to file a complaint, and they accept it and run with it. So I think, I would respectfully suggest that based on the small and non-honorous requirements of setting forth a prima facie case, that satisfies. However, Your Honor, even if you say, I don't think that sets forth a prima facie case, based on the Supreme Court decision in Aiken versus U.S. Postal Service, which we've cited in our reply brief, the Supreme Court said, once the defense has done everything it is required to do to respond to a prima facie case by setting forth a legitimate non-discriminatory reason, whether or not the plaintiff has set forth a sufficient prima facie case, is irrelevant. What are the, what are Ms. Radford's damages? As I understand it, the school district transferred her to another high school within the school district. Other than emotional distress from the transfer, approximately $3,000 a year in lost earnings. She's earning less now than she was in this. Yeah, let me clarify that. Wage, wage the same. However, at the initial school, East Lake High School, where she taught for 10 years, she was not only a teacher, but she was also the yearbook person, and also had a couple of other functions that netted her roughly $3,000 a year extra. Once she's transferred, that's gone. No more yearbook chairman, no more of any of the other things. Didn't I hear you say that you felt that, given this record, they could have transferred her anyway? I said, they could have, had they given her proper notice. I understand that. Yes. But getting the notice problem for a moment, we're talking about procedural due process and that. But you're saying, given this record, they could have transferred her anyway, right? It's hard to see what the great damages are there. Oh, the damage based on the record, though. If you factor in, however, the violation of due process, they couldn't. I mean, that's the whole thing. And let me clear with respect to that. Based on Miller, and I'm moving from the sexual harassment claim to the due process claim now. Based on the California Supreme Court case of Miller, and also the case I cited in my supplemental citations that I sent you, the high circuit case of Yamas versus Duke Community College, the requirement to give an employee, no, I'll say, notice and an opportunity to comment on derogatory or negative information is such that it creates a property interest, such that it may be the basis for a due process or equal protection claim. Clearly. What was in her file that she's complaining about besides the emails that she wrote? The emails that Mr. Salazar wrote in forwarding those emails saying this is bad. The email from Mr., the emails that Mr. Osuna prepared. I'm not saying these were in their file, but according to Miller, they don't have to be in the file. You prepared them and you relied on them. Emails of Salazar commenting on the emails that Osuna wrote, that material is what they relied on. The emails she sent are innocuous without Mr. Salazar saying, this is bad, this is inappropriate. They might look innocuous to you, but to an outside observer, they don't look innocuous. But beyond that, the due process of violation occurred at what point? Now, she did have a full hearing before they made any kind of a permanent transfer, correct? No. She didn't have a hearing? No, she did not. What was that investigation and what's all that testimony? Okay, let me. Just let me ask you that question. What was testimony, et cetera? You asked me a question, what testimony are you talking about? There was a hearing, there was a hearing before another person in the district after Mr. Osuna made his determination that there was sexual harassment. When she was suspended with pay and then asked to put in a different school at that moment or when? What are we talking about? I'm trying to get your timeline specific on when the due process violation occurred. Okay. A sexual harassment complaint is made, right? Yeah, that's true. There is one made? Yes. And Osuna, if I understand it, somebody at that point puts her on administrative leave, am I right? That's correct. Paid administrative leave. Correct. Was that the due process violation? No. Okay. So while she's on paid administrative leave, they then say, we want you to work at this other school while you're on, instead of just sitting at home twiddling your thumbs, we want you to work at this other school now while you're on administrative leave. Whatever that really is, we want you to do it. Is that where the due process violation takes place? No. No, okay. Can I explain where it takes place? I just want to get, just let me take one step at a time. Okay, now, the due process violation then takes place at what point? The due process violation took place when Mr. Osuna received derogatory information from Mr. Salazar about Ms. Radford's communication with him and failed to notify Ms. Radford immediately and give her an opportunity to respond to that. So it took place earlier on? Absolutely. So you'd say, whether they moved her or not, that's irrelevant. There was a due process violation that somehow caused her damage early on. Is that right? Yeah, what I'm saying is, based on Miller, a school district cannot rely on derogatory information in making an employment decision unless the employee is first given notice of that information and an opportunity to respond to it. I think Miller clearly says that. And there were several communications, submissions by Mr. Salazar to Mr. Osuna throughout about a five-month period. And the district- Which derogatory determination did they make? Nothing. Wait a moment. So they could not make a derogatory determination. And because they did, they violated due process. Which derogatory determination was made before he filed his complaint? I said, could not make an adverse employment decision. But the decision was made, the decision to transfer her. One of the two conflicting explanations for when the transfer decision was made is that the transfer decision was made prior to the EEO complaint being filed. That was the first explanation that I received when I communicated with the district's general counsel prior to filing the lawsuit. They said, we decided to transfer Ms. Radford even before the sexual harassment complaint was filed. The second version of that, of course, is Mr. Osuna's version that they decided to transfer Ms. Radford afterwards. And those two conflicting explanations in and of themselves create an issue of fact, create an issue of fact. But I want to be clear with the court that the due process violation occurred every time, every time Mr. Osuna received from Mr. Salazar a complaint about, a written complaint about Ms. Radford's communication and failed to notify Ms. Radford and give her an opportunity to respond and correct if she could. Every time that happened, that was a due process violation. And what Miller says is, when that violation takes place, you can't use that information, that derogatory information in making an employment decision regarding that employee. That's the argument on the due process. I've only got a minute now. If I could reserve time unless there's another question right now. Good morning, Jas Leith appearing on behalf of the Sweetwater Union High School District and the individual defendants. Let me jump right into the first what if. The first what if was, what if she was a man? The district wouldn't have proceeded with a sexual harassment claim. There's no basis for that in the factual record and there is profound basis opposing that conjecture in California law. Effective in 2002, it was a violation of law in California to harass a person on the basis of their sexual orientation. So if she had been a man and had a conversation with or had a letter to Mr. Salazar suggesting that they move to Europe together even if they live in separate bedrooms, taken together with the earlier discussion of pornography, I think that would be both sexual and it would be a basis for a sexual harassment claim. So the argument that this was based on Ms. Radford's gender is supported by neither evidence nor law. Next, I think the most important issue in this case for us is the extension in Miller. The Supreme Court in Miller was discussing a particular statute. That statute is 44031 in the Ed Code. It starts out with, and it's a paragraph, it says every employee has the right to inspect personnel records pursuant to Labor Code section 11985 of the Labor Code. Everybody gets to look at their personnel file in California and this is an Ed Code section that says employees get to look at their personnel file too. Then the B section says, in addition to A, all of the following will apply to an employee of a school district. One, information of a derogatory nature shall not be entered into a employee's personnel records unless and until the employee is given notice and an opportunity to review and comment on the information. There is nothing in the record that I can find that indicates that any derogatory information was entered into her file. I think that ends the analysis of Miller, but I want to go on and make another remark. Counsel, Mr. Tooks did not misstate the language in Miller. It says the words he quoted, he quoted it accurately, but it's coming off of a paragraph that's talking about documents that have been placed in the employee's file or not placed in the employee's file. And in the case of Miller, the assistant superintendent had sandbagged Mr. Miller with a secret file that Mr. Miller had never seen filled with documents and then he used them in a disciplinary hearing. That, A, requires some background. At California, discipline of a teacher is a pretty elaborate process that requires a hearing before an administrative law judge. California Office of Administrative Hearings, it requires a full evidentiary hearing. And that would be my next point. There was no full evidentiary hearing here. There was no discipline. We don't have a disciplinary event. She was transferred within the regulations of the district and within the statute as the district court found. She was transferred with the same pay with the exception of the two stipends. And I believe we briefed out that legal issue. She did have about $3,000 in stipends. When she did move, other people had those stipend positions. So she did lose that $3,000. But those were not property rights. Those, by statute in California, the stipend positions can be withdrawn or reassigned to another person at any time without notice. So she had no right to that $3,000. Every component of her pay that she was entitled to, she got with the transfer. So this was not a, the words that we've been using in California employment law are adverse employment action. This was not an adverse employment action. This was simply an administrative transfer after the attempts to stop her from engaging in sexual harassment failed. This is the most elaborate defense that I have ever seen to a sexual harassment charge. It would harm school districts and the administration of schools in the state of California if a person who was accused of sexual harassment could raise a due process claim. I believe that the district court's very careful analysis of their motion and the denial of that in our motion and the granting of that recognize the issues that face administrators in California. And I respectfully request this court to affirm the decision. Submit. Why did the school district take so long to act between December 19 and June 12th when the emails were continuing? I don't have an answer. There isn't anything in the record. I think the answer is probably human resources officers are extremely busy and it got away from him. I wish he had reacted sooner. I don't really think he saw the problem until the March letter. That's the one that pretty well triggered his reaction, but he still didn't act until June. And he should have acted. Is that Mr. Asuna? That's Mr. Asuna. He should have acted more quickly, but I would point out there that the failure to act more quickly didn't harm Ms. Radford, who it harmed, it potentially harmed the district because it increased the quality of the sexual harassment case by Mr. Salazar. And he did file with the EEOC later, that isn't in the record, but he never did file a lawsuit. Our concern at that point was that he was gonna sue us. And when I say I wish we'd moved quicker, it would have been more difficult to defend Mr. Salazar's suit because of the lateness in our response. We're presumed, as an employer, once we're on notice of sexual harassment, we're presumed to be approving it if we let it happen again. And it happened again. So I think that Mr. Salazar's sexual harassment case was a slant, if he had proceeded. Are there any other questions? Thank you very much. With respect to Miller,  rather than the statute, interpreting the statute in question, Miller held that to enforce the mandate of section 44031, we construe the provision to prohibit a school board from basing any employment decision on its analysis of derogatory information unless the board has notified the employee of such derogatory information and has afforded him an opportunity to comment on it. It doesn't limit, and that's cited at page 34 of the appellant's brief. I've read from Miller, 24 Cal 3rd, 703, page cited 707. That's the holding. So Miller is not limited to, you can't put anything in a personnel file, and not limited to all the employee, the right is limited to the employee looking at it and commenting on it. The holding is pretty clear. The property interest here is not the right to have a particular position, but the right to this notice. Thank you, Your Honors. Thank you, Counsel. Matter just argued will be submitted. We will be in recess then. We'll be in recess until, I guess, counsel appears on the last case. All right, so we'll be in recess this morning. Otherwise, of course, we'll be in recess. Thank you. How much time? Oh, I'm sorry, Judge, that wasn't for you. It was for a gentleman sitting outside who's also watching the camera feed. My apologies. That's okay. Well, how much time do you think it'll be? Blanca thinks about five minutes. Okay, thanks. I'd like to start conferencing. Okay. No, no, no, let's go, but can someone bring my books back? Okay. All right, are they all done? They've taken a recess for five minutes. Oh, but I mean, is it for, are they ready for me? That's correct. Oh, okay. I thought there was one more case. I thought there was one other civil case. No, I think it's the last one of the day. Okay, here, Ryan, move that microphone back. Let me go ahead and move the mic back real quick. Sound check, move it back more. Move it back more. Okay, now open that up. Hello? Sir, can you do one of those? Yeah. Wait, here, flip it over. Yeah, right. Okay, here. Okay, now put, let's see, put all these things, everything, no, no, put these, the booklets, right? All these right here? Yeah. Yeah. Okay, okay. And here, grab my pencil. You want me to put it in like this? No. Oh, hold on. Okay, you ready? Oh, you got it. You want me to turn this on? Yeah, turn this off. There? Uh-huh. Can you write from there? Yeah. Okay. Also, would you get my cup out and pour some water in there? No, that's good, that's good. Just put it right there. No, not that close, not that close. Yep, I'm good to go. All right. All right.
judges: Fernandez, Wardlaw, Collins